[Crim. No. 1424. Fourth Dist. June 8, 1960.]

THE PEOPLE, Respondent, v. WILLIAM VIGGHIANY, Appellant.

622

Gostin & Katz, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Robert M. Sweet, Deputy Attorney General, James Don Keller, District Attorney (San Diego), and Stuart C. Wilson, Deputy District Attorney, for Respondent.

SHEPARD, Acting P. J.—William Vigghiany, appellant herein, along with Angelo Ciaramitaro, Gayla Rogers and John Doe, was charged by an indictment filed in the Superior Court of San Diego County December 11, 1958, with the crime of conspiracy to violate Health and Safety Code, section 11500, and also with three separate counts of unlawful sale of narcotics (marijuana). Three overt acts were alleged in furtherance of this conspiracy, two as of November 26, 1958, and the third as of November 29, 1958. Count two included only Vigghiany and Ciaramitaro as of November 26, 1958. Count three included Vigghiany, Ciaramitaro and Rogers as of November 29, 1958. Count four included only Vigghiany as of December 4, 1958.

Ciaramitaro pleaded guilty prior to trial and did not appear at the trial either as a party or a witness. Rogers was certified to and handled by the juvenile court and did not appear

herein either as a party or a witness. After a jury trial starting February 6, 1959, appellant was found guilty on all four counts as charged. Motions for a new trial and arrest of judgment were denied March 6, 1959. Appellant was sentenced to state prison, and appeals from the judgment of conviction.

From the record before us, it appears that one Robert Modica, in August, 1958, at the request of the sheriff's office, introduced Deputy Sheriff Ernest Halcon to appellant. Halcon posed as Frankie Stella, an ex-convict, interested in purchasing narcotics. During the period from August to December, 1958, Halcon was engaged in a wide investigation of narcotics activities in San Diego County, as a result of which 67 different persons were arrested.

Robert Modica had been employed by the sheriff's office to assist Officer Halcon in making contacts through which Halcon could become acquainted with persons engaged in the narcotics traffic. During the latter part of August and all of the month of September, 1958, Modica met with Halcon and appellant on several occasions for the apparent purpose of assisting Halcon in his efforts to get into contact with actual narcotics sales through appellant. There is considerable conflict between the testimony of Halcon and the testimony of numerous defense witnesses as to how often Halcon called appellant for these purposes. Defense testimony was to the effect that Halcon or Modica, or both, telephoned the defendant or personally visited him at least once a day for almost three months, often treating him to drinks of beer although they knew he was a minor. Officer Halcon denies the extent numerically of these calls and of the treating to beer, but does say that on two occasions appellant was furnished with beer by someone and drank it in his presence and that Officer Halcon did give a shirt to appellant as a gratuity for having introduced him to Ciaramitaro.

There does not appear to be any substantial conflict as to the occurrence of the overt acts. Thus an arrangement was made at the request of Officer Halcon, on November 26, 1958, by which Halcon went to appellant's home, and there met Ciaramitaro. Halcon gave appellant a shirt for appellant's part in introducing him to Ciaramitaro, a discussion was had as to price, the three drove to another place, Ciaramitaro retrieved from a hiding place marijuana and received from Halcon $33 therefor. November 29, Ciaramitaro called Halcon, arranged a meeting place near San Diego Zoo, where the three

again met, along with a girl named Gayla Rogers. Marijuana was there turned over by Ciaramitaro to Halcon, Halcon paid $24, and the parties separated. December 4, at appellant's house, Ciaramitaro, appellant and Halcon met. Halcon paid appellant $30 to buy from one Richard Arlen. Apparently Arlen at that time had driven up in an automobile into which appellant entered and drove off, reappearing later with the marijuana. Gayla Rogers appeared on the scene while they were waiting. During the course of all these proceedings numerous conversations occurred between appellant and Halcon and others in the presence of Halcon, which taken together with the overt acts are ample to support the verdict of the jury, and appellant raises no question as to the sufficiency of the evidence, as a matter of law, to support the verdict.

Appellant raises numerous questions on appeal relating to various matters, the particular facts peculiar to each of which will be reserved for later discussion.

### INSPECTION OF HALCON'S ORIGINAL NOTES

During the course of Halcon's three months' investigation, he compiled several pages of notes relating thereto. These notes, of course, involved not only appellant but also a large number of other persons. Some three weeks to one month prior to trial, Halcon made a summary of that portion of the original notes which dealt with appellant. Appellant had been charged in three separate indictments returned by the San Diego Grand Jury December 11, 1958, with two separate conspiracies and with several counts of sale. These three indictments were numbered CR 398 (present case) CR 400 and CR 402. CR 400 commenced trial January 22, 1959, and an advised verdict of acquittal was returned by the jury January 23, 1959. CR 402 trial commenced January 29, 1959, and on February 6, 1959, shortly after the cause had been submitted to the jury and while the jury was still deliberating, the case here at bar commenced. Apparently defense counsel thus became aware prior to the commencement of the present trial of the existence of said original notes and Officer Halcon's plan to use a summary thereof to refresh his memory on the witness stand. At the commencement of this trial (CR 398) appellant moved for permission to inspect the original notes. Apparently in the prior trial a similar request had been made, the trial judge had inspected the original notes for the purpose of determining whether there was in them anything of

value to defense and had refused the defense permission to see them. Appellant's counsel's desire to see the original notes was, of course, for the purpose of adequate cross-examination of Officer Halcon. In the making of the motion for permission to see the notes, defense counsel removed whatever embarrassment there might have been respecting the other 64 persons involved in the investigation by making clear that all material relating to such other persons might be blocked out or deleted so that it would not be visible to inspecting counsel. The trial judge stated that he had personally inspected the notes in the other trial and said: "I found nothing I think that would be of any value to counsel or to defendant."

During the trial while Halcon was testifying, appellant's counsel again requested permission to examine the original notes, and also asked for additional *voir dire* examination as to the circumstances under which the notes were made. Again during cross-examination of Halcon, appellant's counsel repeated the request for an order for production of the original notes, and again the court denied permission to see the notes, stating, in effect, that he had seen the notes and that there was nothing of value to appellant therein.

In the case at bar, the only serious divergence between the prosecution and the defense lies in that testimony which, from the standpoint of the prosecution, would make of the present case one of conspiracy with the necessary overt acts or, from the standpoint of the defense, would make of it a clear case of entrapment. Under the testimony in the case at bar, the gap between entrapment and conspiracy is very narrow. The impression of the jury might well have been radically different depending upon the interpretation it placed on just a few words between Halcon, Modica, and the appellant during the original contacts. Any embarrassment the government might have felt about revealing information pertaining to numerous other investigations was removed by the offer or suggestion of defense counsel in making the motion that the material relating to other defendants be screened or cut out.

The fundamental judicial policy of this country requires that each defendant, young or old, rich or poor, be given a fair trial. A fair trial includes the right to have produced in open court all evidence material to the question of guilt or innocence which may be feasibly obtained. ▉ As was said in *People* v. *Riser*, 47 Cal.2d 566, 586 [26] [305 P.2d 1]:

"Absent some governmental requirement that information be kept confidential for the purposes of effective law enforce-

ment, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and in particular it has no interest in convicting on the testimony of witnesses who have not been rigorously cross-examined and as thoroughly impeached as the evidence permits. To deny flatly any right of production on the ground that an imbalance would be created between the advantages of prosecution and defense would be to lose sight of the true purpose of a criminal trial, the ascertainment of the facts.''

Code of Civil Procedure, section 2047, provides as follows: ''WHEN WITNESS MAY REFRESH MEMORY FROM NOTES. A witness is allowed to refresh his memory respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. But in such case the writing must be produced, and may be seen by the adverse party, who may, if he choose, cross-examine the witness upon it, and may read it to the jury. So, also, a witness may testify from such a writing, though he retain no recollection of the particular facts, but such evidence must be received with caution.''

Respondent suggests that the summary was prepared at a time when the matters involved were fresh in the witness' memory. However, the evidence clearly shows that the summary was not prepared from the witness' memory but rather was taken from the original notes. We can find nothing in the evidence which would indicate that the memory of Halcon was refreshed by anything except that which he took from the original notes. Admittedly the summary deleted portions of the original notes which pertained to this case. In effect, the witness was refreshing his memory from only those portions of the original notes that he thought might be cogent to the case. The eye and mind of the judge was not the eye and mind of the defendant or his counsel. As was said of this kind of situation in *People* v. *Cartier*, 51 Cal.2d 590, 599 [3] [335 P.2d 114]:

''It permitted the trial judge to pass upon defendant's motion on the basis of evidence and documents not available to defendant or his counsel and had the effect of substituting the judge for defendant's counsel, insofar as defendant was to be represented by counsel, in arguing the admissibility or effect of the documents with respect to his motion.

"They were before the judge as a basis for the judge's rulings but were never available to defendant.

"Such a procedure was violative of defendant's right to due process of law. It permitted the judge to base his ruling upon evidence prepared by the prosecution, but denied to defendant and his counsel the right to inspect and know what such evidence was.

" . . . . . . . . . .

"It is a denial of due process of law and fundamental fairness for a court to determine such issues upon the basis of evidence available to it and the prosecution but not also available to the defendant and his counsel. It is analogous to denying to the accused his right to cross-examine or confront witnesses produced against him. In fact, it is more akin to a procedure whereby a defendant and his counsel would be prevented from even seeing the witnesses or hearing their testimony or examining physical evidence."

As a matter of ordinary fairness, we can see no justice to a requirement that defendant show as a condition precedent to examination that the concealed document did, in fact, contain material contradictory of the witness' testimony. If it contained nothing from which cross-examination could develop contradictory statements or inferences on entrapment contrary to those drawn by the prosecution, then there would be no purpose in concealing it in any event. As was said in *People* v. *Chapman*, 52 Cal.2d 95, 98 [3] [338 P.2d 428]:

"Ordinarily a defendant cannot show that a statement contains contradictory matters until he has seen it, and, if such a showing were a condition precedent to production, his rights would be dependent upon the highly fortuitous circumstance of his detailed knowledge as to the contents of the statement."

On the question of prejudice, it must be remembered that Officer Halcon was the sole witness for the prosecution by which the greater share of the evidence linking appellant to the alleged conspiracy was proved. Where an officer merely employs a device or means of discovering the person already engaged in criminal activities, there is no entrapment, but if the planning of an offense was conceived by the officer and he promoted its commission by one who would not have perpetrated it except for the trickery, persuasion or fraud of the officer, there may be entrapment. (*People* v. *Schwartz,* 109 Cal.App.2d 450, 454 [2] [240 P.2d 1024].)

 In the case at bar, the principal burden of the defense testimony was to the effect that the defendant was not in

any way engaged in the narcotics traffic and did not desire to in any way become connected with it; that the only reason he ever looked up a narcotics peddler was at the persuasion of Modica, who was the paid employee of the sheriff's office, and Halcon, the deputy sheriff. The question of whether the deputy sheriff used an assumed name and pretended to be an ex-convict is immaterial. Thus, the whole gamut of the dealings between Halcon and Modica, Modica and appellant, and the three of them together, would be the proper subject of searching cross-examination. Without the application of the critical eye and mind of defense counsel to the deleted portion of the notes, there is no possible way to predict what evidence might have been developed to persuade the mind of the jury that the whole affair was, in reality, conceived in the mind of the officer, or Modica, the employee, or both. We think the error was seriously prejudicial under the particular facts of this case.

We do not here hold that the notes of a witness, police officer or otherwise, which the witness does not use on the witness stand to refresh his memory, are necessarily the subject of inspection by opposing counsel. That question is not before us. What we do hold is that under the peculiar facts of the case here at bar where the police officer recorded notes of his dealings concerning this defendant over a period of several months, where the police officer took excerpts and a summary from these notes but did not reproduce all of the notes which pertained to this defendant, and where the government was relieved of the embarrassment of divulging information pertaining to other cases by the blocking out of all material not pertaining to this defendant, it is error to refuse permission to examine them for cross-examination purposes, and that under the particular circumstances here involved, the error was fatally prejudicial.

PLEAS OF FORMER ACQUITTAL AND ONCE IN JEOPARDY

From the record before us, it appears that the indictment in cause CR 400 charged William Vigghiany, Judy Ellis, Oscar Jones, Al Firestone and a John Doe (John Doe was never identified nor served) with conspiracy to sell narcotics in violation of Health and Safety Code, section 11500, with overt acts alleged to have been committed on or about September 4, 1958. It also charged the same defendants with sale as of September 4, 1958. The indictment in cause CR 402 charged Davonne Claggett Terrell and William Vigghiany with sale

of narcotics in violation of said section 11500, Health and Safety Code, under date of September 5, 1958. The indictment in cause CR 398 (here on appeal) charged William Vigghiany, Angelo Salvatore Ciaramitaro, Gayla Rogers and a John Doe (John Doe was never identified nor served) with conspiracy to violate said section 11500, Health and Safety Code, with overt acts under dates of November 26 and November 29, 1958, and with three direct counts of sale under dates of September 26, September 29 and December 4, respectively. At original arraignment December 15, 1958, appellant herein pleaded not guilty, but did not plead "once in jeopardy" nor "former acquittal." At the commencement of the trial of the case here at bar, appellant requested permission to enter both pleas. In making this motion, appellant gave to the court no explanation of why he believed these pleas should be permitted except to state to the court: "And also in connection with the case which has just been tried where the jury is out and deliberating now, I wish in connection with this matter that the decision in that case, the verdict in that case be considered double jeopardy in this case, and also a plea of res judicata, all the matters concerned in this trial having been covered in that previous trial, the verdict of the jury which is about to be handed down will be res judicata and double jeopardy in this case."

Cause CR 400 had at that time already been tried (January 22 and 23) and resulted in an advised verdict of acquittal. Cause CR 402 had been tried and the cause had on February 6 been submitted to the jury (ultimately resulting in jury disagreement).

It will be noted that on the record before us, except for the fictitiously named John Doe who was never identified nor served, none of the charges involved the same group of defendants nor the same dates.

■ The general rule is that the right to interpose such a plea is a matter of personal privilege to the defendant and is waived unless interposed at the proper time. (*Ex parte Burns,* 78 Cal.App.2d 294, 301 [1] [177 P.2d 649]; *People v. Allen,* 47 Cal.App.2d 735, 748 [10] [118 P.2d 927].) ■ Ordinarily the plea must be entered at the time of arraignment. (Pen. Code, § 1016.) However, at any time after arraignment the court, upon proper showing, in the exercise of its sound discretion, may permit the plea to be entered. (*People* v. *Pollock,* 31 Cal.App.2d 747, 756 [8-9] [89 P.2d 128].) ■ The burden of proof on each of these pleas is

on the defendant. (*Ex parte Martin,* 51 Cal.App. 706, 707 [1] [197 P. 365]; *People* v. *Burkhart,* 5 Cal.2d 641, 643 [1] [55 P.2d 846].) ▉ It is well established that under proper circumstances there is no error in the trial judge's refusal to permit either of these pleas. (*People* v. *Lyon,* 135 Cal.App.2d 558, 586 [18] [288 P.2d 57].)

▉ In the case here at bar, as far as the record before us shows, there was no similarity of parties or dates between CR 398, 400 and 402. Under this condition of affairs, we think it was incumbent upon defense counsel to explain in detail to the trial judge how appellant expected to show that the three cases were identical insofar as appellant was concerned. Otherwise there would be no good reason for the court and jury to waste their time in considering such pleas, and therefore no good reason why the court should permit such a plea. It is true that some belated expression was offered at the time of the motion for a new trial, but this was too late.

▉ Where the facts are uncontradicted and different inferences cannot be drawn, the decision on a plea of once in jeopardy or on a plea of prior acquittal is one of law for the court to decide, not the jury. (*People* v. *Brain,* 75 Cal.App. 109 [241 P. 913]; *People* v. *Wilkison,* 30 Cal.App. 473, 477 [158 P. 1067].)

▉ No appeal was taken from the order denying the motion for a new trial. On an examination of the entire testimony, we are unable to discover how appellant expected to prove the necessary elements to support the plea of either former acquittal or once in jeopardy. Without adequate explanation to the trial court or some showing on the record itself as to identity of offenses and parties, we think the trial court should not be charged with error, and we are unable to ascribe merit to the point raised. It would appear that the provisions of section 1017 of the Penal Code were not clearly complied with by defense counsel, although we do not base our opinion on that defect. Undoubtedly, if adequate explanation is offered to show some reasonable cause for entertaining these pleas, the judge before whom the matter comes on retrial will permit the pleas to be entered.

#### REQUESTED CONTINUANCE

▉ Appellant contends that the trial judge committed prejudicial error in refusing the defendant a short continuance at the end of CR 402 and before the commencement of CR 398. The record shows that the trial of CR 402 commenced

on January 29, 1959, and that the court and parties were engaged in the trial of that case continuously thereafter until 9:30 a. m. on the morning of February 6, 1959. Thereupon defense counsel moved for a continuance for the purpose of ascertaining the whereabouts and securing the attendance of Robert Modica. Inasmuch as there was no showing that Robert Modica could be located within a short time, we are unable to find fault with the court's ruling in that respect, especially since even the information then newly available indicated that he was outside the court's jurisdiction. However, defense counsel also asked for a short delay for preparation of a new trial. The trial court rejected the plea of once in jeopardy, thereby making clear that the new trial involved different and new issues as distinguished from those present in CR 402. There appears to be no dispute as between counsel in this case that each of the three indictments was prosecuted by a different deputy district attorney. The trial judge denied defendant's request for a continuance, even for as much as one day. However, this cause was on December 15 set down for trial for February 4 as a trailing case to immediately follow causes CR 400 and CR 402. The transcript of the oral proceedings clearly indicates that all counsel accepted this as correct and it is therefore apparent that the clerk's note of ''3-4-59'' was a mere clerical error and that none of the counsel were misled thereby. We are therefore unable to ascribe error, for counsel had had more than a month and a half to prepare for trial.

### ACCUMULATED TRIALS

 Appellant next contends that these proceedings were an attempt to wear the appellant out with accumulated trials. We think the cases of *Hoag* v. *State of New Jersey,* 356 U.S. 464 [78 S.Ct. 829, 2 L.Ed.2d 913] ; *Palko* v. *State of Conn.,* 302 U.S. 319 [58 S.Ct. 149, 82 L.Ed. 288], do not support appellant's contention on the facts of the case here at bar. The cases here involved were comparatively short, and in our opinion appellant was not subjected to a procedure which amounted to fundamental unfairness in having the three trials proceed in the form and manner in which they did proceed, considering all the circumstances of the present case.

### DECLARATIONS OF COCONSPIRATORS

 Appellant also raises questions relating to the receipt in evidence of declarations of coconspirators made outside appellant's presence. The order in which evidence in a trial is presented is within the sound discretion

of the trial court. We think the trial court did not commit error. (*People* v. *Sica*, 112 Cal.App.2d 574, 584 [13] [247 P.2d 72]; *People* v. *Stanley*, 162 Cal.App.2d 416, 419-420 [327 P.2d 973].)

## KNOWLEDGE OF NARCOTICS

 Appellant contends that on cross-examination, his prior use of narcotics was improperly inquired into. Appellant, in his own testimony, had made statements indicating complete ignorance of the narcotics traffic. Questions were proper to show that he did, in fact, contrary to the inferences contained in his examination in chief, have contact with and know about the use of narcotics. (*People* v. *Westek*, 31 Cal.2d 469, 476 [6] [190 P.2d 9].) We find nothing in *People* v. *Benford*, 53 Cal.2d 1 [345 P.2d 928], to aid appellant in this respect.

Because of our views hereinbefore expressed and the resultant remanding of the cause for a new trial, we deem discussion of other points raised by appellant unnecessary.

In view of the importance to the accused of the right to see and cross-examine on the original notes of Officer Halcon, the chief witness for the prosecution, we think the defendant's right to a fair trial was prejudicially violated.

The judgment is reversed.

Coughlin, J., concurred.