[Crim. No. 22257. First Dist., Div. Four. Mar. 23, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY MAURICE FERGUSON, Defendant and Appellant.

1016

COUNSEL

Max A. Creamer, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Herbert F. Wilkinson and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—Gregory Maurice Ferguson appeals from a judgment of imprisonment after one jury found him guilty of four counts of grand theft (Pen. Code, § 487) charged in an information and another jury found him guilty of one count of check fraud (Pen. Code, § 476a) charged in a separate information. The facts of the two cases, designated in the trial court as MCR 3597 and MCR 3598, will be reviewed separately.

### MCR 3598

The information charged appellant in one count with passing a total of 35 checks with insufficient funds. Appellant opened a checking account at the Wells Fargo Bank with a deposit of over $300. One week later, appellant closed the account claiming he had lost his checkbook. Using the balance of the closed account and an additional $200, appellant opened another account at the same bank. This account was closed less than a month later.

Appellant wrote about 35 checks on the two accounts; the checks were written over a 2-month period and involved more than 20 payees. These checks were never paid because the accounts had been closed or had insufficient funds. Most of the checks bore a notation of "promissory note" or "not for deposit"; this notation was often written illegibly in small letters over the account number on the check.

One of the checks in question was written to William Hotchkiss in payment for a Lincoln Continental automobile. Hotchkiss tried to cash the check but the bank refused to honor it and stated that appellant had no account at the bank. Testimony of numerous other recipients of appellant's bad checks revealed similar fact patterns.

## MCR 3597

### Count I

In March 1980, Jacob Bunch and appellant agreed to trade appellant's stereo set for Bunch's car. Later it was agreed that appellant would instead pay $200 for the car. Title to the car was held by a bank since Bunch had used the car for collateral on a loan. Appellant agreed that when he obtained title from the bank, he would pay Bunch for the car. Appellant later came to Bunch with the pink slip and asked Bunch to sign the car over to him. Bunch refused.

### Counts II and III

In early May 1980, Bruce Schaeffer agreed to buy the same car from appellant. Schaeffer gave appellant a $50 check to hold the car; the payee portion of the check was left blank. The following day appellant advised Schaeffer that he had lost the check so Schaeffer should stop payment on it; Schaeffer did so.

A few days later, Schaeffer paid appellant $475 of the total $550 price for the car; Schaeffer received the car. Appellant stated that he would keep the pink slip until Schaeffer paid the balance of $75; this balance was to be paid by June 5. In early June, Schaeffer requested and appellant agreed to a two-week extension for payment of the $75. Less than a week later, appellant came to Schaeffer's home and asked if he could take the car in order to remove some items left in the trunk. After some discussion Schaeffer agreed to appellant's request and appellant promised to return the car within a half hour. Three hours

elapsed and appellant did not return the car. Schaeffer's subsequent attempts to locate appellant and retrieve the car were unsuccessful.

### Count IV

In July of 1980, William Hotchkiss sold appellant his Lincoln Continental automobile for $200 and a stereo. Hotchkiss received the stereo and a $200 check from appellant. When Hotchkiss tried to cash the check, the bank refused and informed him that appellant had no account. The check written to Hotchkiss was on an account which appellant had closed two to three months before this transaction.

■ Appellant contends that the trial court erred when it failed to give *sua sponte* an instruction concerning jury unanimity. (CALJIC No. 17.01.) The argument is that where the information charged, in a single count, 35 separate instances of issuing insufficient-funds checks the jury should have been instructed that it is required to reach unanimous agreement on the act or acts constituting the offense.

■ Generally, where a "defendant is charged in a single count with several offenses and the evidence tends to show that he committed more than one such offense, the jury must agree upon the particular act committed in order to convict." (*People* v. *McNeill* (1980) 112 Cal.App.3d 330, 335 [169 Cal.Rptr. 313]; accord *People* v. *Hefner* (1981) 127 Cal.App.3d 88, 96 [179 Cal.Rptr. 336]; *People* v. *Madden* (1981) 116 Cal.App.3d 212, 219 [171 Cal.Rptr. 897].) Such an instruction is required in order to ensure that any conviction will be based on a *unanimous* jury verdict. (Cal. Const., art. I, § 16.)

This rule has been applied in the context of multiple assaults committed on separate victims, a situation analogous to the present case. In *McNeill*, appellant was charged in a single count with multiple offenses of assault. The assaults were "perpetrated by a single individual during an indivisible course of conduct" upon separate victims. (*People* v. *McNeill, supra*, 112 Cal.App.3d 330, 334.) Each assault, however, comprised a separate punishable offense. (*Id.*) The jurors were not instructed that "at minimum they must unanimously agree as to a single individual among those alleged ... as victims upon whom an assault was committed. (See, e.g., CALJIC No. 17.01.) ... [T]he jurors could have differed in their individual verdicts as to the identity of the victim of the assault." (*Id.*, at p. 335.) The court held that this instructional

error required reversal since there was no assurance that the jurors had agreed unanimously upon the act constituting the offense.

A similar rationale applies to the present case. Here, the prosecutor requested the court to give CALJIC No. 17.01; that request was refused. The jurors were merely instructed that they all "must agree to the decision and to any finding [they had] been instructed to include in [the] verdict." The jurors were not instructed that they must unanimously agree on the particular act or acts constituting the offense. In order to convict appellant of a felony, the jurors were required to find that the insufficient-funds checks issued by appellant exceeded $100. (Pen. Code, § 476a.) It is possible that, in reaching that $100 amount, the jurors relied on different offenses to convict appellant. Since there is no way to gauge the precise effect of the instructional error, the conviction on count I of MCR 3598 must be reversed. (*People v. Hefner, supra*, 127 Cal.App.3d 88, 97; *People v. McNeill, supra*, 112 Cal.App. 3d 330, 336.)

Respondent argues that the statute under which appellant was charged, Penal Code section 476a, falls within the "continuous course of conduct" exception to the instructional requirement. "The continuous conduct exception only really applies, if at all, to those types of offenses where the statute defining the crime may be interpreted as applying, on occasion, to an offense which may be continuous in nature such as failure to provide, child abuse, contributing to the delinquency of a minor, driving under the influence and the like [citations]." (*People v. Madden, supra*, 116 Cal.App.3d 212, 218.) Respondent cites *People v. Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299], in support of his argument. This case involved child abuse and is inapposite to the case at bar.

The continuous conduct exception cannot be construed to include the offense here. The acts here involved different victims, at separate times and were only connected by the fact that they were committed by the same individual utilizing a single modus operandi. Respondent's argument must therefore be rejected and appellant's conviction on count I of MCR 3598 must be reversed.

Appellant contends that there were several incidents of prosecutorial misconduct during both the MCR 3598 and 3597 trials.

■ "'Prosecutorial misconduct implies the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury....'" (*People v. Strickland* (1974) 11 Cal.3d 946, 955 ....'" (*People v. Patino* (1979) 95 Cal.App.3d 11, 29 [156 Cal.Rptr. 815].) Absent an objection and a request for admonition, claims of misconduct may be considered on appeal only if "'"the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict[; or] where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court."'" (*People v. Lambert* (1975) 52 Cal.App.3d 905, 908 [125 Cal.Rptr. 404]; accord *People v. Green* (1980) 27 Cal.3d 1, 33 [164 Cal.Rptr. 1, 609 P.2d 468].)

■ Appellant first complains that, in his MCR 3598 closing argument, the prosecutor improperly referred to certain evidence. This argument is discussed solely for the purpose of providing guidance on retrial of the charge in MCR 3598. The prosecutor argued that although there was a possible defense on a particular check in that appellant informed the payee that there were insufficient funds to cover the check, it was nevertheless written with the intent to defraud because the account had already been closed. The disclosure of the present insufficiency of funds is a defense to the charge in MCR 3598, count I. (*People v. Poyet* (1972) 6 Cal.3d 530 [99 Cal.Rptr. 758, 492 P.2d 1150].) It was improper for the prosecutor to imply to the jury that the *Poyet* defense would not apply here since appellant had closed his account.

■ Appellant next argues that there was insufficient evidence to support a conviction on count I in MCR 3597, theft of an automobile from Jacob Bunch. ■ Whenever the sufficiency of evidence is challenged on appeal, the appellate court must review the record in the light most favorable to the judgment and determine whether the evidence would justify a reasonable trier of fact in finding the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738].) The appellate court must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*Id.*, at p. 576.) "[I]t is not the function of the reviewing court to reweigh the evidence." (*People v. La Fontaine* (1978) 79 Cal.App.3d 176, 186 [144 Cal.Rptr. 729].)

■ The verdict on this count is well supported by circumstantial evidence. Appellant obtained the car from Bunch on the basis of his promise to give Bunch a stereo in return. Bunch received neither the promised stereo nor a later agreed upon cash payment of $200. This evidence supports a finding that appellant misled Bunch into letting him have the car based on his false promises of compensation.

■ Appellant next claims that his convictions on counts I and II of MCR 3597 must be reversed on the basis that state action prevented him from fulfilling his obligations to pay Bunch and transfer title to Schaeffer. There was indeed evidence that investigating officers directed Bunch not to transfer title to the car to appellant or accept money from him. That evidence was perhaps probative on the issue of appellant's intent but there was other evidence from which the jury might reasonably determine that appellant acted with fraudulent intent when he obtained the car from Bunch without paying the agreed consideration and later took money from Schaeffer without transferring title as promised.

■ Appellant contends that he was placed in double jeopardy when he was prosecuted for the theft of a car (MCR 3597, count IV) after he had been prosecuted and convicted for issuing checks without sufficient funds based in part on the check written to purchase the same car (MCR 3598).

This claim is raised for the first time on appeal. The burden of proof on a plea of double jeopardy is on the defendant. (*People* v. *Vigghiany* (1960) 181 Cal.App.2d 621, 630-631 [5 Cal.Rptr. 501].) Appellant's failure to plead once in jeopardy or former judgment of conviction constituted a waiver of those defenses. (*People* v. *Martin* (1978) 87 Cal.App.3d 573, 578, fn. 5 [151 Cal.Rptr. 141]; *People* v. *Belcher* (1974) 11 Cal.3d 91, 96 [113 Cal.Rptr. 1, 520 P.2d 385]; *People* v. *Garcia* (1958) 166 Cal.App.2d 141, 145 [333 P.2d 69]; see also Pen. Code, § 1017.)

Moreover, any double jeopardy claim here is without merit. The offenses of issuing a check without sufficient funds and grand theft are separate offenses. (*People* v. *Freedman* (1952) 111 Cal.App.2d 611, 614 [245 P.2d 45]; see also *People* v. *Mason* (1973) 34 Cal.App.3d 281, 284-285 [109 Cal.Rptr. 867].)

■ Appellant next argues that improper exclusion of certain evidence requires reversal of the convictions on counts II and III of MCR 3597. These counts concern the transaction between appellant and Schaeffer in which Schaeffer gave money to appellant in exchange for a car (count II). Appellant subsequently retrieved the car from Schaeffer under the ruse of borrowing it (count III).

The first claim of error concerns a police report which appellant contends was improperly excluded from evidence. The document in question was a police record which supported appellant's claim that he had called the police to report a vehicle repossession when he took the car back from Schaeffer. When appellant attempted to move this document into evidence, an objection was made and sustained on the basis of hearsay.

The police record here was inadmissible hearsay in that it was evidence of an out-of-court statement made by appellant, offered to prove the truth of the matter asserted, i.e., that appellant had repossessed a vehicle. (Evid. Code, § 1200.) Police records may, in some circumstances, be admissible under the business records exception to the hearsay rule. (Evid. Code, § 1271.) In order to be considered under this exception, however, a proper foundation must be established. The report must be shown to have been made in the regular course of business, at or near the time of the act, condition or event; the custodian or other qualified witness must testify to its identity and the mode of its preparation and finally the sources of information and method and time of preparation must be such as to indicate its trustworthiness. (Evid. Code, § 1271; *People v. De La Plane* (1979) 88 Cal.App.3d 223, 252 [151 Cal.Rptr. 843].) Here no such foundation was laid; the evidence was properly excluded.

■ Appellant next contends that a municipal court judgment rendered in his favor should have been received in evidence. The judgment apparently involved a suit brought by Schaeffer against appellant for the money he lost in the car transaction. An objection to the admission of this evidence on the basis of relevance was sustained. Although the judgment might be relevant, it was properly to be excluded as hearsay.

"[A] judgment that is offered to prove the matters determined by the judgment is hearsay evidence. . . . Therefore, unless an exception to the hearsay rule is provided, a judgment would be inadmissible if offered in a subsequent action to prove the matters determined." (Law Revision

·Com. comment, Evid. Code, § 1300; see also Witkin, Cal. Evidence (2d ed. 1966) § 604, p. 573.) The trial court's exclusion of the evidence must be sustained.

Finally, the record as filed supports appellant's contention that in giving an instruction (CALJIC No. 14.10) the court used the word "with" when the proper word would have been "without." But the record has been corrected to reflect that in actuality the court instructed the jury correctly.

The judgment in MCR 3598 is reversed. The judgment in MCR 3597 is affirmed, and the cause is remanded for resentencing since count I of MCR 3598 was used as the principal term at sentencing. (See Pen. Code, §§ 1170 and 1170.1.)

Caldecott, P. J., and Poché, J., concurred.