Filed 5/1/14  P. v. Cabral CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICK DALE CABRAL,<br><br>    Defendant and Appellant. | F065560<br><br>(Super. Ct. No. CRM019562A)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the nonpublished opinion filed herein on April 10, 2014, be modified as follows:

At the top of page 5, the first two full sentences beginning with "Evidence presented" and ending with "was necessary" are modified to read as follows:

> Evidence presented and argument by the prosecutor reflected that Cabral received these various items of stolen property at the same time in the same burglary and from the same victim.  Cabral argues that, since multiple acts were alleged to prove a single count and he presented different defenses to the acts, a unanimity instruction was necessary.

At the bottom of page 6, the sentence beginning with "Further, the unanimity rule" and the citations that follow ending with "continuous in nature" are deleted. The following new paragraph is inserted in its place.

> Further, the unanimity rule is inapplicable where a series of acts form part of one and the same transaction and as a whole constitute but one and the same offense. (*People v. Jefferson* (1954) 123 Cal.App.2d 219, 221; *People v. Diedrich* (1982) 31 Cal.3d 263, 281, 282 [limited "continuous conduct exception" applies where the offenses have such a close temporal relationship that they are part of one transaction or the offense is one that may be continuous in nature].) "The 'continuous conduct' rule applies when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them. [Citation.]" (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100.) Even though Cabral attempted to offer different defenses for being in possession of the various items (Patino's testimony that the items belonged to Cabral and their mutual friend Gene; Gonzales's testimony that some of the items were hers and were being hauled to the dump for her), the differences are not significant given the nature of the conduct and the course of these events. On the record, we conclude no unanimity instruction was required.

There is no change in judgment.

Appellant's petition for rehearing filed on April 21, 2014, is denied.

_____
Franson, J.

WE CONCUR:


_____
Gomes, Acting P.J.


_____
Poochigian, J.

2.

Filed 4/10/14 (unmodified version)

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICK DALE CABRAL,<br><br>    Defendant and Appellant. | F065560<br><br>(Super. Ct. No. CRM019562A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County. Donald J. Proietta, Judge.

Julie Dunger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Rick Dale Cabral was convicted by jury of one count of receiving stolen property (Pen. Code, § 496, subd. (a))[1] and one count of commercial burglary (§ 459).[2] In a bifurcated proceeding, the trial court found true the prior prison term allegation attached to both counts. The trial court imposed a four-year sentence, which was suspended and Cabral was placed on probation for three years on the condition that he serve 180 days in jail.

Cabral contends only that the trial court erred in failing to sua sponte give a unanimity instruction on the charge of receiving stolen property. We disagree and affirm.

## STATEMENT OF THE FACTS

On the evening of March 24, 2011, Sheriff's Deputy Lane Clark responded to a call of suspicious activity on a road in Planada. Upon arrival, Deputy Clark saw a Ford Ranger pickup truck (pickup) partially off the edge of the road with its headlights facing toward the road. A Dodge Durango sport utility vehicle (SUV) was further down the chain-link fence line, about 30 yards off the roadway. It had been raining hard that evening, and the SUV was stuck in the mud. Tow cables were attached and stretched between the two vehicles. Lockie was in the driver's seat of the pickup. Cabral and Patino were standing by the back of the SUV.

Deputy Clark spoke to Lockie, who said that Cabral had called, saying his vehicle was stuck in the mud and he needed help pulling it out. Cabral approached Deputy Clark, said the SUV was his, and that it had gotten stuck in the mud when he turned off the road to make a U-turn.

---

[1]     All further statutory references are to the Penal Code.

[2]     Codefendant Max Patino was also found guilty of receiving stolen property; Codefendant Erick Lockie was acquitted of the same offense. Neither is a party to this appeal.

2.

When two other sheriff's deputies arrived, Deputy Clark asked that they stand with Cabral and Lockie. Deputy Clark then spoke with Patino, who said he rode there with Cabral. Patino appeared nervous and did not want to answer a lot of questions.

Deputy Clark looked inside the SUV with a flashlight and saw "all kinds of stuff in there." He also saw fresh shoeprints in the grass, which he followed back to a large hole cut into the chain-link fence. Inside the fence, the shoeprints lead to the back door of a commercial building about 10 to 12 feet from the fence. Scattered along the shoeprint path, from the vehicle to the building, were numerous items. Deputy Clark noticed that the door to the building was open and a cut padlock was on the ground next to the door.

Deputy Clark compared Cabral's boots with the shoeprints he found and opined that the two matched. Deputy Clark also observed the tire tracks of the SUV and found no indication of an attempted U-turn. Instead, the SUV appeared to have driven off the paved road in a straight line parallel to the fence.

Deputy Clark spoke to Patino who said he had not gone through the fence, but he thought Cabral had.

Sheriff's deputies called Chad Richards who had been renting the land. Richards said that he used the land to graze goats and, in the six months he had rented the land, there had been numerous break-ins or acts of vandalism to the building on the property. Richards checked the building almost daily to make sure none of the goats were trapped inside.

The sheriff's deputies asked Richards to look at the items in the SUV and pickup to see if he recognized them. Richards said he saw a bed frame, box of tools, and table in the pickup, which were from inside the building. He also recognized items in the SUV including a welder's mask, a hydraulic jack, numerous tools, and canvas bags with books and silverware, which were also from the building.

3.

According to Richards, the door to the commercial building had been locked when he left the property earlier that day at 3:00 p.m. Richards did not know Cabral, Lockie, or Patino, and, to his knowledge, none of them had permission to enter the property and remove items from the commercial building. Richards approximated the value of the items taken to be around $5,000.

Roxanne Gonzales, a friend of Lockie's, testified that, earlier that day, Lockie had done some yard work for her and hauled away stuff, including a disassembled bed frame, in his truck. But Lockie did not remove a box of tools for her.

Patino testified that on March 24, 2011, he visited a friend, Gene, and an aunt in a trailer park. After the visit, he saw Cabral at the trailer park. Cabral asked Patino if he wanted to go for a ride. Patino thought Cabral wanted his help moving into his new trailer. When he got into Cabral's SUV, he saw various items. Patino thought the canvas bags and torque wrench in the SUV belonged to Cabral and that the welding helmet belonged to Gene.

During the drive, Cabral made a three-point turn and drove the vehicle into the dirt and sunk in the mud. Cabral called Lockie to come help get him out. About a half hour after Lockie arrived, the sheriff's deputies arrived.

Patino denied entering the property or building, and denied taking items from the building. He also denied telling a sheriff deputy that Cabral may have gone through the hole in the fence. According to Patino, one of the sheriff's deputies told him that Cabral went through the open hole in the fence and another deputy told him, "[H]ey, I'll let you and your buddy go if you say [Cabral] did it."

## DISCUSSION

Cabral was charged with a single count of receiving stolen property. The information alleged the following:

> "On or about March 24, 2011 Rick Cabral and Erick Lockie and Max
> Patino did unlawfully buy, receive, conceal, sell, and withhold numerous

4.

> tools, a bed frame, a table, a welder's mask, a hydraulic jack, a canvas bag full of books[,] a canvas bag full of silverware and other miscellaneous items, the property of Chad Ronald Richards which had been stolen, knowing such property to be stolen, in violation of PENAL CODE SECTION 496(a)."

Evidence presented and argument by the prosecutor reflected that Cabral received these various items of stolen property obtained at the same time in the same burglary and from the same victim. Although Cabral did not present any evidence, he argues that, since multiple acts were alleged to prove a single count, a unanimity instruction was necessary. We disagree.

A defendant is entitled to a verdict in which all 12 jurors concur beyond a reasonable doubt as to each count charged. (*People v. Jones* (1990) 51 Cal.3d 294, 305.) "When an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534; *People v. Mota* (1981) 115 Cal.App.3d 227, 231 [""'[w]here there are multiple acts placed before a jury, each being a separate chargeable offense in itself, the prosecution must elect the act on which the charge will stand," or otherwise "the jurors [might] range over the evidence at will and pick out any one of the offenses upon which to found its verdict." [Citations.]'"].) If a case requires use of the instruction, the court must give it sua sponte. (See *People v. Hefner* (1981) 127 Cal.App.3d 88, 97.)

The reason for this requirement is that absent an election or a unanimity instruction, when there is more than one unlawful act shown by the evidence, there is the risk that the jurors will select different acts in finding guilt, with none of the acts being chosen by the jurors unanimously. This would violate the constitutionally based requirement that the jury must unanimously agree on each charge. "'The [unanimity]

instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.] [¶] On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the case often put it, the 'theory' whereby the defendant is guilty. [Citation.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

Here, the information charged Cabral with one act of receiving stolen property. The evidence and argument by the prosecutor reflected that Cabral received various items of stolen property obtained at the same time, in the same burglary and from the same victim. Two or more stolen items received in the same transaction do not constitute separate offenses and cannot be charged separately. (*People v. Lyons* (1958) 50 Cal.2d 245, 275 [receipt of stolen watch and fur coat on a single occasion is one offense even if received from different sources], disapproved on other grounds in *People v. Green* (1980) 27 Cal.3d 1, 32; see also *People v. Smith* (1945) 26 Cal.2d 854, 858-859.) Hence, the various items of stolen property allegedly received by Cabral in one transaction constituted only one offense which could not be separately charged and for which a unanimity instruction was therefore not required. (*People v. Mota, supra,* 115 Cal.App.3d at p. 231 [the separate acts must constitute separate chargeable offense to require unanimity instruction].) Further, the unanimity rule is inapplicable where a series of acts form part of one and the same transaction and as a whole constitute but one and the same offense. (*People v. Jefferson* (1954) 123 Cal.App.2d 219, 221; *People v. Diedrich* (1982) 31 Cal.3d 263, 281, 282 [limited "continuous conduct exception" applies where the offenses have such a close temporal relationship that they are part of one transaction or the offense is one that may be continuous in nature].)

We reject Cabral's argument to the contrary. We also reject his claim made in supplemental briefing that the recent case of *People v. Hernandez* (2013) 217 Cal.App.4th 559, is applicable. In *Hernandez,* the defendant was charged with one count of firearm possession, but there was testimony of two separate instances of gun possession "separated by time and space." (*Id.* at p. 574.) The prosecutor did not differentiate between the two instances in arguing defendant's guilt. The court rejected the People's argument on appeal that the offenses were part of a continuous course of conduct and found reversible error in failing to give a unanimity instruction. (*Id.* at pp. 571-575.)

We also reject Cabral's alternate claim that counsel was ineffective for failing to request the instruction. Because the unanimity instruction was inapplicable, the trial court would have refused a request to give it. Counsel's failure to make an unmeritorious request is not ineffective assistance. (*People v. Price* (1991) 1 Cal.4th 324, 387.)

## DISPOSITION

The judgment is affirmed.

_____

Franson, J.

WE CONCUR:


_____

Gomes, Acting P.J.


_____

Poochigian, J.

7.