[No. H036719. Sixth Dist. Dec. 27, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER ANTHONY DAVIS, Defendant and Appellant.

432

## Counsel

Jonathan Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric Share and Masha A. Dabiza, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WALSH, J.**[*]—Defendant was required to register as a sex offender under California law. He did so. Later he changed residences, first within California and later out of state, without registering any of his new addresses. Defendant was charged with violation of his duty to properly register as a sex offender under both federal law (18 U.S.C. § 2250) and state law (Pen. Code, former § 290, subd. (f)(1)(A), now § 290.013).[1]

In this case, we consider whether, under California double jeopardy principles, defendant's prosecution in federal court for failing to register as a sex offender after traveling in interstate commerce bars subsequent prosecution in state court for failing to register his new California address as a sex offender before he moved out of state. We conclude that defendant's prosecution in state court did not violate California double jeopardy prohibitions because the state and federal prosecutions punished separate acts of failing to register and because the conduct at issue in the state court action occurred before defendant traveled in interstate commerce and before the effective date of the federal statute.

---

[*]Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

## BRIEF STATEMENT OF THE CASE

Defendant Christopher Anthony Davis was convicted by plea of one count of failing to update his sex offender registration within five working days of changing his residence address (former § 290, subd. (f)(1)(A), now § 290.013). He also admitted enhancement allegations that he had been convicted of one prior serious felony for the purposes of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12). His prior offense was a conviction for lewd or lascivious conduct with a child under the age of 14 (§ 288, subd. (a)), the offense that required him to register as a sex offender. The court granted defendant's *Romero*[2] motion, struck the strike prior, and sentenced defendant to 16 months in prison. In light of his custody credits, the sentence was deemed served.

On appeal, defendant contends that the court erred when it denied his motion to dismiss the complaint. In that motion, defendant argued that prosecution for failure to update his registration as a sex offender was barred on double jeopardy grounds because he had already been convicted of failure to register as a sex offender (18 U.S.C. § 2250) in federal court based on the same wrongful conduct. In light of our holding, we will affirm the judgment.

## FACTS[3] AND PROCEDURAL HISTORY

Defendant was born and raised in Missouri. He came to California in the fall of 2003 at age 17 to attend Stanford University.

### I. *Underlying Sex Offense*

While visiting his extended family in Southern California over the Thanksgiving holiday in 2003, defendant engaged in lewd or lascivious conduct with his 13-year-old male cousin (Victim). The alleged conduct occurred over the course of two days and included kissing and "dry-hump[ing]" Victim, touching Victim's buttocks and penis under his pajama pants, masturbating Victim's penis, and instructing Victim to put lotion on his (Victim's) hands and stroke defendant's penis.

Defendant was charged with four counts of lewd or lascivious conduct with a child under the age of 14 (§ 288, subd. (a)). In March 2004, he was

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].

[3] The evidentiary facts are taken from (1) the police and probation reports from Los Angeles County regarding the underlying offense; (2) the police report and the probation report in this case; and (3) the exhibits attached to defendant's motion to dismiss, defendant's *Romero* motion, and the prosecution's opposition to the motion to dismiss.

convicted of one count of lewd or lascivious conduct and the other counts were dismissed. The court granted five years' probation, on the condition that defendant serve 90 days in jail. The court also ordered defendant to register as a sex offender pursuant to former section 290, now sections 290 to 290.023.

II.  *Failure to Register as Sex Offender in 2006*

Upon his release from jail, defendant returned to Stanford University. He registered with the Stanford University Department of Public Safety in December 2004.

In January 2006, defendant moved into private dormitory-style housing off campus (the House). Though he moved in with 12 other Stanford students, he felt disconnected from campus life because he was no longer permitted to live on campus. On January 27, 2006, defendant registered with the Palo Alto Police Department. When he registered with the Palo Alto Police Department, Officer Zach Perron read defendant each of his registration requirements and verified that defendant understood each of the requirements by having him initial each on a form.

On June 15, 2006, around the time Stanford's spring quarter ended, members of the Palo Alto Police Department conducted a routine compliance check on sex offender registrants and discovered that defendant was no longer living at the House. The landlord reported that defendant moved in at the end of January 2006, that defendant never paid rent, and that the landlord initiated eviction proceedings against defendant in early May 2006 and boxed up his belongings in early June 2006. The other residents of the House reported that they rarely saw defendant there, that they had not seen him for at least one month, and that defendant was staying with friends in dorm rooms on campus. On June 15, 2006, defendant called one of the investigating officers and stated that he still lived at the House and that his landlord must be mistaken.

On June 26, 2006, defendant sent the investigating officer an e-mail in which he stated that he would be in the Los Angeles area at an alternate address he had previously registered, that he planned to go home to Missouri for the summer, and that he would no longer be at the House. Subsequently, officers were unable to locate defendant at the alternate address in the Los Angeles area. Defendant's uncle who lived at that address said defendant was not living there, he had not seen defendant in months, and he did not know where defendant was. The officers also determined that defendant had not registered in Missouri.

On August 16, 2006, the prosecution filed the instant complaint in Santa Clara County Superior Court alleging two felony counts: (1) failure to

register multiple addresses (former § 290, subd. (a)(1)(B), now § 290.010) and (2) failure to inform law enforcement of a change in address (former § 290, subd. (f)(1)(A), now § 290.013). Both offenses were alleged to have occurred on or about June 20, 2006. In August 2006, the court issued a warrant for defendant's arrest.

## III. *Defendant Traveled Out of State*

Defendant did not return to Stanford in the fall of 2006. In his statement to law enforcement in June 2009, defendant said he left California in September 2006 and traveled to New York City, where he obtained employment at a hostel. (From this statement, we infer that he did not return to Mo. that summer.) Defendant remained in New York until March 2008, when he moved to Miami, Florida, to work for the same hostel company. Defendant lived in Miami until September 2008, and then returned to New York. Between September 2008 and June 2009, defendant lived at three different addresses in New York City and worked for two different hostel companies. He did not register as a sex offender in either New York or Florida.

## IV. *Federal Court Proceedings*

In the spring of 2009, the U.S. Marshals Service began investigating defendant's failure to register. On May 27, 2009, the federal prosecutor filed a criminal complaint in the district court for the Northern District of California alleging that between June 2006 and June 2009 defendant was required to register under the federal Sex Offender Registration and Notification Act (SORNA; 42 U.S.C. § 16901 et seq.), had traveled in interstate commerce, and had failed to register or update his registration as required by SORNA in violation of 18 United States Code section 2250. The court issued a warrant and defendant was arrested in New York City in June 2009. Defendant was subsequently indicted in federal district court in San Jose, California.

On October 26, 2009, defendant pleaded guilty to the federal indictment. In March 2010, he was sentenced to time served (approximately nine months) and "a two-year term of supervised release."

## V. *State Court Proceedings*

Upon his release from federal custody in March 2010, defendant was arrested on his outstanding state court warrant and taken into custody in Santa Clara County. Defendant remained in jail until he was sentenced in the state court action.

### A. *Motion to Dismiss*

In June 2010, defendant filed a motion to dismiss the state court action, arguing that the double jeopardy protections of sections 656 and 793 bar prosecution of the two counts for failure to register in state court because he had already been convicted of failing to register in federal court based on the same conduct.

In opposition to the motion, the prosecution argued that defendant had not been placed once in jeopardy because the acts constituting the state and federal crimes were not the same. The prosecution asserted that the federal action addressed defendant's conduct in crossing state lines and failing to register in New York and Florida, while the state action was based on his failure to register his change of address and multiple addresses while still in California.

The court denied the motion to dismiss. Citing *Carr v. United States* (2010) 560 U.S. ___ [176 L.Ed.2d 1152, 130 S.Ct. 2229] (*Carr*), the court explained that failing to register under the federal statute can only be based on conduct that occurred after defendant travelled in interstate commerce. The court reasoned that, because the state action alleged a failure to register on or about June 20, 2006, and defendant did not leave California until September 2006, the two actions did not cover the same conduct.

### B. *Plea and Sentencing*

In September 2010, defendant pleaded no contest to count 2 of the complaint (failing to update his sex offender registration within five working days of moving, former § 290, subd. (f)(1)(A), now § 290.013) and admitted the strike prior. Count 1 was dismissed.

In February 2011, defendant was sentenced in state court. The court granted defendant's *Romero* motion, struck the strike prior, and sentenced him to the lower term of 16 months in prison. In light of his custody credits, the court deemed the sentence served and released defendant from custody, subject to three years' parole supervision.

### DISCUSSION

Defendant contends that the court erred in denying the motion to dismiss, arguing that the complaint should have been dismissed on state double jeopardy grounds.

### I. *General Principles Governing State Double Jeopardy*

■ "Our state double jeopardy clause, like that of the federal Constitution, provides that a person may not be subjected to a second prosecution for

the same offense for which he or she has once been prosecuted and convicted or acquitted. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.)" (*People v. Lazarevich* (2001) 95 Cal.App.4th 416, 421 [115 Cal.Rptr.2d 419] (*Lazarevich*).) But "prosecution and conviction for the same act by both state and federal governments are not barred by the Fifth Amendment guarantee against double jeopardy. [Citations.] This rule, however, does not preclude a state from providing greater double protection than is provided by the federal Constitution under decisions of the United States Supreme Court." (*People v. Comingore* (1977) 20 Cal.3d 142, 145 [141 Cal.Rptr. 542, 570 P.2d 723] (*Comingore*).)

The applicable California statutes are sections 656 and 793. Section 656 provides: "Whenever on the trial of an accused person it appears that upon a criminal prosecution under the laws of the United States, or of another state or territory of the United States based upon the *act or omission* in respect to which he or she is on trial, he or she has been acquitted or convicted, it is a sufficient defense." (Italics added.)

Section 793 provides: "When an *act* charged as a public offense is within the jurisdiction of the United States, or of another state or territory of the United States, as well as of this state, a conviction or acquittal thereof in that other jurisdiction is a bar to the prosecution or indictment in this state." (Italics added.) The differences between sections 656 and 793 are "of no legal significance; neither statute provides greater protection than the other." (*People v. Walker* (1981) 123 Cal.App.3d 981, 984–985, fn. 1 [177 Cal.Rptr. 147].)

A guilty plea or a plea of no contest is equivalent to a conviction and bars a subsequent conviction for the same offense. (*People v. Bivens* (1991) 231 Cal.App.3d 653, 658–659 [282 Cal.Rptr. 438].)

To determine whether a defendant has been placed once in jeopardy in another jurisdiction, we consider the *physical* elements of each crime. (*Lazarevich, supra*, 95 Cal.App.4th at p. 421.) Construing the words " 'act or omission' " as they are used in section 656, the Supreme Court in *People v. Belcher* (1974) 11 Cal.3d 91, 99 [113 Cal.Rptr. 1, 520 P.2d 385] (*Belcher*) explained that "a defendant may not be convicted after a prior acquittal or conviction in another jurisdiction if all the acts constituting the offense in this state were necessary to prove the offense in the prior prosecution [citation]; however, a conviction in this state is not barred where the offense committed is not the same act but involves an element not present in the prior prosecution."

## II. Standard of Review

The parties disagree regarding the standard of review to be applied in this case. Defendant urges us to review the double jeopardy question presented here under the de novo standard of review, while the Attorney General argues that our review is limited to determining whether there is substantial evidence that supports the trial court's order on the motion to dismiss.

When the double jeopardy question requires the trial court to resolve disputed facts, the appellate court reviews the case under the substantial evidence standard. (*People v. Batts* (2003) 30 Cal.4th 660, 682–683 [134 Cal.Rptr.2d 67, 68 P.3d 357] [double jeopardy issue turned on question whether prosecution in previous trial intended to induce a successful mistrial motion].) But, when the facts are uncontradicted and different inferences cannot be drawn, the question of former jeopardy is one of law for the court to decide. (*People v. Vigghiany* (1960) 181 Cal.App.2d 621, 631 [5 Cal.Rptr. 501] [defendant is entitled to a jury trial on question of former jeopardy].) Moreover, determination of whether double jeopardy applies in a case involving separate prosecutions of the same or similar conduct in different jurisdictions requires the court to compare and construe the applicable criminal statutes from both jurisdictions. (See, e.g., *Comingore, supra*, 20 Cal.3d at pp. 144, 146 & fns. 1–3; *Lazarevich, supra*, 95 Cal.App.4th pp. 422–423.) The construction of a statute is also a question of law. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) On appeal, we review questions of law de novo. (*In re Corrine W.* (2009) 45 Cal.4th 522, 529 [87 Cal.Rptr.3d 691, 198 P.3d 1102].) Since this case involves undisputed facts and requires us to construe the applicable state and federal statutes, we shall review the matter independently.

## III. Review of Case Law Applying Section 656

■ Before examining the state and federal statutes at issue here, we review the key cases applying section 656. As the court explained in *People v. Bellacosa* (2007) 147 Cal.App.4th 868, 874 [54 Cal.Rptr.3d 691], "Decisional authorities demonstrate that in considering whether a California prosecution is barred by a prior conviction or acquittal in another jurisdiction, courts look solely to the physical acts that are necessary for conviction in each jurisdiction. If proof of the same physical act or acts is required in each jurisdiction, then the California prosecution is barred. If, however, the offenses require proof of different physical acts, then the California prosecution is not barred even though some of the elements of the offenses may overlap."

For example, the defendant in *People v. Candelaria* (1956) 139 Cal.App.2d 432 [294 P.2d 120] (hereafter *Candelaria I*) robbed a national bank. Because

the bank's funds were federally insured, he was convicted of bank robbery in federal court. Later, he was also convicted of bank robbery in state court. (*Id.* at pp. 433–434.) The Court of Appeal concluded the California conviction was barred by section 656 because "[a]ll the acts constituting the state offense were included in the federal offense and were necessary to constitute the federal offense." (*Candelaria I, supra,* at p. 440.) The court held that the additional elements required to convict in federal court (i.e., that the funds belonged to a national bank and were federally insured) pertained to the jurisdiction of the federal court and were not related to any activity on the part of the defendant. (*Ibid.*)

On remand, the defendant in *Candelaria I* was convicted in state court of burglary for his entry into the bank with the intent to steal. (*People v. Candelaria* (1957) 153 Cal.App.2d 879 [315 P.2d 386] (hereafter *Candelaria II*).) The Court of Appeal affirmed, holding the defense of once in jeopardy is not met simply because multiple crimes arise "from the same series of acts." (*Id.* at p. 884.) The court explained that "[t]he 'act' spoken of in [section 656] must be 'the same act.' The burglary act complained of in [the state] case, that is, the entering of the building with the intent to commit a theft, is not the same act complained of in the federal court, namely, that he pointed a gun at the teller and by force and fear compelled her to deliver over to him certain monies." (*Candelaria II,* at p. 884.)

In *Belcher, supra,* 11 Cal.3d 91, 94 the defendant assaulted and robbed a federal narcotics agent and an undercover agent of the Oakland Police Department who were attempting to engage in a narcotics sting operation. The defendant was charged in federal court with a single count of assault with a deadly weapon on a federal officer and acquitted. (*Id.* at pp. 94–95 & fn. 2.) He was later convicted in state court of assault with a deadly weapon on the federal officer and two counts of robbery, one involving the federal officer and one involving the Oakland Police Department undercover agent. (*Id.* at pp. 94–95.) He subsequently challenged his state court convictions on double jeopardy grounds. The Supreme Court held that the assault conviction in state court could not stand because it was based on the same act, "the same assault upon the same person," as the federal prosecution. (*Id.* at pp. 99–100.) The court explained that "the federal offense required proof of no additional *act* on the part of [the] defendant; it merely required proof of the status of the victim" as a federal officer "for jurisdictional purposes." (*Id.* at p. 100, fn. omitted.) But the court held that the robbery convictions were proper because they involved additional acts by the defendant (the taking of personal property) that were not necessary for proof of the federal assault charge. (*Id.* at pp. 100–101.) The court emphasized that the *Candelaria* decisions "demonstrate the meaning to be given to the terms 'act or omission' as they are used in section 656" and held that a defendant may not be convicted in this state after a prior acquittal or conviction in another jurisdiction "if all the acts

constituting the offense in this state were necessary to prove the offense in the prior prosecution," but may be convicted where the offense "is not the same act [because it] involves an element not present in the prior prosecution." (*Belcher, supra*, at p. 99.)

The defendant in *Comingore, supra*, 20 Cal.3d 142, took a car without the owner's permission in Glendale, California, and drove it to Oregon. He was convicted in Oregon of the unauthorized use of a vehicle. He was later charged in California with "grand theft auto and unlawful driving or taking of a vehicle." (*Id.* at p. 144.) On appeal, the People conceded the California charges were based on the same physical conduct as the Oregon charge, but argued the California charges included an additional element, i.e., the intent to permanently or temporarily deprive the owner of the car. (*Id.* at p. 146.) The Supreme Court held that while intent is an element of a crime or public offense, it is not an "act" within the meaning of section 656 and that the California prosecution was therefore barred. (*Comingore, supra*, at pp. 144, 148–149.) The court based its analysis on a comparison of the physical acts charged, and not the mental intent with which the acts are performed. (*Id.* at pp. 146–148.)

In *People v. Friedman* (2003) 111 Cal.App.4th 824 [4 Cal.Rptr.3d 273] (*Friedman*), four defendants were involved in multistate crimes, including robbery, extortion, kidnapping, and drug dealing. As part of the criminal enterprise, they kidnapped two California victims for extortion and later murdered them. The defendants were charged in federal court with numerous offenses, including a violation of the "Travel Act," a federal statute that prohibits travel in interstate or foreign commerce or the use of the mails or the facilities of interstate or foreign commerce with the intent to commit a crime of violence to further an unlawful activity if the defendant thereafter performs or attempts to perform such an act. (18 U.S.C. § 1952.) After they were convicted of the Travel Act violations in federal court, the defendants were charged in California with kidnapping for ransom and murder. (*Friedman*, at pp. 826–830.) The Court of Appeal held that the federal convictions did not bar the California prosecution. The federal offense required interstate travel, which was not required to prove the California offenses. The California crimes required that the kidnapping and murder be completed, which was not necessary for proof of the federal offense. (*Id.* at pp. 836–837.) The court concluded that section 656 did not apply because the state and federal charges required different physical acts. (*Friedman, supra*, 111 Cal.App.4th at p. 837.)

IV. *Federal and State Statutes at Issue in This Case*

With this authority in mind, we proceed to the next step in our analysis and compare the state and federal criminal statutes at issue. At the time of

defendant's offenses, former section 290, subdivision (f)(1)(A), the offense he was convicted of in state court, provided: "Any person who was last registered at a residence address pursuant to this section who changes his or her residence address, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, shall, in person, within five working days of the move, inform the law enforcement agency or agencies with which he or she last registered of the move, the new address or transient location, if known, and any plans he or she has to return to California." (Stats. 2005, chs. 704, § 1, 722, § 3.5.)

The acts or omissions by the defendant that constitute a violation of former section 290, subdivision (f)(1)(A) are that the defendant (1) registers pursuant to section 290; (2) moves and thereby changes his residence address; and (3) fails to inform the law enforcement agency with which he previously registered of the change in address and other information.

Defendant was convicted in federal court of violating 18 United States Code section 2250, which provides in relevant part: "Whoever—[¶] (1) is required to register under the Sex Offender Registration and Notification Act; [¶] (2) . . . [¶] (B) travels in interstate or foreign commerce, . . . ; and [¶] (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; [¶] shall be fined under this title or imprisoned not more than 10 years, or both."

The acts or omissions that constitute a violation of 18 United States Code section 2250 are that the defendant (1) is required to register under the federal statute (SORNA); (2) travels in interstate commerce; and (3) fails to register or update his registration.

Defendant contends that his prosecution in state court was barred because "[b]oth the state and federal laws punish a person who (1) is required to register, (2) moves away, and (3) fails to register or update registration that he has left his former residence." Citing *Comingore*, defendant argues that the "federal crime has the additional requirement that the defendant travel in interstate or foreign commerce. But this additional element does not defeat the double jeopardy claim" and that for "the state conviction not to be barred, the *state* offense must ' "involve[] an element not present in the prior prosecution." ' " He asserts the elements of the California crime were a subset of the federal crime.

The United States Supreme Court recently construed 18 United States Code section 2250 in *Carr, supra*, 560 U.S. ___ [130 S.Ct. 2229], where it explained, "Since 1994, federal law has required States, as a condition for the receipt of certain law enforcement funds, to maintain federally compliant

systems for sex-offender registration and community notification. In an effort to make these state schemes more comprehensive, uniform, and effective, Congress in 2006 enacted the Sex Offender Registration and Notification Act (SORNA or Act) as part of the Adam Walsh Child Protection and Safety Act, Pub. L. 109-248, Tit. I, 120 Stat. 590." (*Carr, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2232].) The court stated that 18 United States Code section 2250 is not a stand-alone provision; it is part of a "broader statutory scheme enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks" and end up "missing" after failing to comply with their registration requirements. (*Carr, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2240].)

■ "SORNA, . . . P.L. No. 109-248, 120 Stat. 587 (Jul. 27, 2006), imposes a federal obligation on anyone convicted of a sex offense (a crime that has an element involving a sexual act or sexual contact with another) to register in each jurisdiction in which he [or she] resides, works, or attends school by providing his [or her] name, social security number, home and work addresses, and vehicle description(s), and to keep [the] registration current. 42 U.S.C. § 16913; *see also* §§ 16911(1) (defining 'sex offender'); 16911(5)(A)(i) (defining 'sex offense'); § 16914 (listing information sex offender must provide)." (*U.S. v. Sanders* (7th Cir. 2010) 622 F.3d 779, 781 (*Sanders*).) Section 2250 of title 18 of the United States Code "gives teeth" to SORNA's registration requirements by imposing criminal liability on those who fail to register. (*Sanders, supra*, at p. 783.)

The issue in *Carr* was whether 18 United States Code section 2250 applied to a sex offender who was convicted under state law and traveled in interstate commerce before the effective date of the statute. (*Carr, supra*, 560 U.S. at pp. ___–___ [130 S.Ct. at pp. 2232–2233].) The defendant in *Carr* was convicted of a sex offense in Alabama in 2004, had moved to Indiana by early 2005, and did not comply with Indiana sex offender registration requirements. (*Carr, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2233].) In August 2007, he was charged with violating 18 United States Code section 2250. (*Carr, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2233].) The federal district court denied the defendant's motion to dismiss the indictment and he appealed. (*Carr, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2233].)

Construing 18 United States Code section 2250, the *Carr* court observed that the statute contains three elements: (1) a person who is required to register under SORNA; (2) travels in interstate or foreign commerce; and (3) knowingly fails to register or update a registration. (*Carr, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2232].) The court held that "[f]or a defendant to violate this provision, . . . the statute's three elements must 'be satisfied in

sequence, culminating in a post-SORNA failure to register.' " (*Carr, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2235].) The court explained that the act of travel is "an aspect of the harm Congress sought to punish," and that while the act of travel serves as a jurisdictional predicate for the offense, it is also "the very conduct at which Congress took aim." (*Carr, supra*, 560 U.S. at pp. ___, ___ [130 S.Ct. at pp. 2239, 2240].) The court held that 18 United States Code section 2250 does not apply to sex offenders whose interstate travel occurred before the effective date of the statute. (*Carr, supra*, 560 U.S. at pp. ___, ___, ___ [130 S.Ct. at pp. 2233, 2236, 2237].)

Further review of *Carr* informs our analysis. The *Carr* court stated that 18 United States Code section 2250 treats "federal and state sex offenders differently." (*Carr, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2238].) The statute makes it a federal offense for a sex offender who has been *convicted under state law* to ignore the duty to register or to update his or her registration when the offender travels in interstate commerce. (*Sanders, supra*, 622 F.3d at p. 781, citing 18 U.S.C. § 2250(a).) Persons *convicted of federal sex offenses* are liable for the knowing failure to register or update their registration regardless of whether they travel in interstate or foreign commerce. (*Id.* at pp. 781–782, citing 18 U.S.C. § 2250(a)(2)(A).)

*Carr* explained that "it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders—persons who typically would have spent time under federal criminal supervision. It is similarly reasonable for Congress to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such offenders to federal criminal liability only when, after SORNA's enactment, they use the channels of interstate commerce in evading a State's reach." (*Carr, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2238].) "In enacting SORNA, Congress preserved this basic allocation of enforcement responsibilities. To strengthen state enforcement of registration requirements, Congress established, as a funding condition, that '[e]ach jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.' [(42 U.S.C. § 16913, subd. (e).)] Meanwhile, Congress in [18 U.S.C. section ]2250 exposed to federal criminal liability, . . . persons required to register under SORNA over whom the Federal Government has a direct supervisory interest or who threaten the efficacy of the statutory scheme by traveling in interstate commerce." (*Carr, supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2239], fn. omitted.)

As the *Sanders* court observed "Those persons who have been convicted of state sex offenses do not become liable for the failure to register unless they

cross state lines, thereby becoming 'instrumentalities' of interstate commerce making use of the interstate transportation routes which are the 'channels' of such commerce. [Citations.] SORNA thus defines the crime of failing to register in such a way that 'the use of the channels and instrumentalities of interstate commerce is necessarily part of the commission of the targeted offense.' [Citation.] At the same time, the sequential reading of section 2250's three elements that the Supreme Court adopted in *Carr*, 560 U.S. ___ [130 S.Ct. 2235]—conviction of a sex offense, followed by interstate travel, followed by the failure to register as required by SORNA, ' "helps to assure a nexus between a defendant's interstate travel and his failure to register as a sex offender." ' " (*Sanders, supra*, 622 F.3d at pp. 782–783.) "Imposing a duty to register as a matter of federal law would do little to solve the problem of sex offenders slipping through the cracks absent the enforcement mechanism supplied by section 2250. Interstate travel by a sex offender is not merely a jurisdictional hook but a critical part of the problem that Congress was attempting to solve, for whenever sex offenders cross state lines they tend to evade the ability of any individual state to track them and thereby 'threaten the efficacy of the statutory scheme . . . .' " (*Sanders*, at p. 783, quoting *Carr, supra*, 560 U.S. at pp. ___–___ [130 S.Ct. at pp. 2238–2241].) The federal statute "ensures that state sex offenders are penalized for the failure to register only when they move in interstate commerce." (*Id.* at p. ___ [130 S.Ct. at p. 783].)

The record reflects that defendant moved several times after registering in January 2006. First, in the spring of 2006, he moved from the House to various dorm rooms on the Stanford campus. Second, in June of 2006, he moved from the House and the dorm rooms to the Los Angeles area or some other location in California. Third, in September of 2006, he moved from that California location to New York. Thereafter, he moved to Florida, and back to New York.

■ *Carr* and *Sanders* hold that defendant could not be prosecuted under the federal statute simply for moving within this state. His conduct, moving and failing to register after the move, only became a federal offense when he moved to New York in September 2006. Thus, defendant's first two moves were not subject to prosecution under the federal statute. The state complaint focused on defendant's conduct related to defendant's second move and alleged a failure to update registration on or about June 20, 2006, long before defendant left California. When the state complaint was filed in August 2006, no federal offense had yet taken place, since defendant did not flee the state until September 2006.

Although the federal indictment alleged that defendant had failed to register between June 2006 and June 2009, *Carr* holds that he was not subject

to prosecution under the federal statute until he traveled in interstate commerce in September 2006 and thereafter failed to register. We note also that SORNA and 18 United States Code section 2250 did not go into effect until July 27, 2006, a little over a month after defendant committed the offense alleged in the California complaint. (*Sanders, supra*, 622 F.3d at p. 781.) Moreover, for persons convicted of sex offenses prior to the enactment of SORNA, the Ninth Circuit has held that SORNA's registration requirements became effective on August 1, 2008, 30 days after the United States Attorney General properly promulgated regulations that extended SORNA's requirements to such offenders. (*U.S. v. Valverde* (9th Cir. 2010) 628 F.3d 1159, 1169.) The federal appellate courts are divided on this question. (*U.S. v. Johnson* (2010) 632 F.3d 912, 922, fns. 48–50.) The "Supreme Court acknowledged this conflict but had no occasion to decide the issue in *Carr v. United States*" (*U.S. v. Johnson*, at p. 922, fn. omitted.) We need not address this question because under either view, 18 United States Code section 2250 had not yet gone into effect on June 20, 2006, the date alleged in the California complaint in this case.

Although the offense charged in the California complaint was not subject to prosecution under the federal law and can be characterized as a separate offense from that alleged in the federal indictment, we must also determine whether it was incorporated into the federal prosecution once that case went forward. Citing *People v. Rouser* (1997) 59 Cal.App.4th 1065, 1073 [69 Cal.Rptr.2d 563] (*Rouser*), defendant contends that his failure to register after January 2006 was a " 'single crime that cannot be fragmented into more than one offense.' " He also relies on *Lazarevich, supra*, 95 Cal.App.4th 416 and former section 290, subdivision (g)(8), now section 290.018, which provided: "Any person who is required to register under this section who willfully violates any requirement of this section is guilty of a continuing offense as to each requirement he or she violated." (Stats. 2005, chs. 704, § 1, 722, § 3.5.)

Defendant's reliance on *Rouser* is misplaced. The defendant in *Rouser* was convicted of three counts of possession of a controlled substance by a prison inmate (§ 4573.6) for possessing (1) cocaine base and marijuana on March 6, 1993; (2) methamphetamine on June 26, 1995; and (3) heroin on June 26, 1995. (*Rouser, supra*, 59 Cal.App.4th at p. 1067.) Construing the language of section 4573.6, which punishes the possession of "any controlled substances" in prison, the court held that the "contemporaneous possession in state prison of two or more discrete controlled substances . . . at the same location constitutes but one offense" under section 4573.6. (*Rouser*, at p. 1067.) The court held that the defendant could not be convicted of all three counts, since he possessed the heroin and the methamphetamine on the same day in the same location (his cell) and reversed the conviction for possession of heroin. (*Id.* at pp. 1072–1074.) However, the court allowed the defendant's conviction for possession of controlled substances on a separate date to stand.

Similarly, the defendant here committed at least two discrete offenses: first, when he failed to update his registration when he moved from the House to some other location in California in June 2006 and, second, when he failed to update his registration when he moved from California to New York in September 2006.

Defendant's reliance on *Lazarevich* is also misplaced. The defendant in *Lazarevich* was divorced and his ex-wife had physical custody of their two children. In October 1989, defendant failed to return the children to their mother in Los Angeles and took them to Serbia. In January 1992, the defendant was convicted in Serbia of taking and detaining the children from the lawful custody of their mother in violation of Serbian law. (*Lazarevich, supra*, 95 Cal.App.4th at pp. 419–420, 422.) The children remained concealed in Serbia until June of 1995. In 1999, the defendant was charged in California with two counts of retaining and concealing a minor child (§ 278.5) between October 1989 and June 1995. (*Lazarevich, supra*, 95 Cal.App.4th at p. 419.) The defendant moved to dismiss, arguing that his Serbian conviction barred prosecution under double jeopardy principles because it was based on the same acts as the California prosecution. (*Id.* at p. 420.) The trial court granted the motion and the People appealed.

On appeal in *Lazarevich*, the People argued that prohibiting the prosecution in California would allow the defendant to escape punishment and receive a windfall for his ability to keep the children concealed for three additional years, and that the act of continuing to conceal the children was a separate offense. (*Lazarevich, supra*, 95 Cal.App.4th at pp. 422–425.) This court held that the trial court erred by dismissing the information to the extent that it charged conduct between January 1992 and June 1995. We observed that "[t]he premise that gave rise to the protections guaranteed by the double jeopardy doctrine was 'that a defendant should not be twice tried or punished for the same offense.'" (*Id.* at p. 425.) We noted that "[s]ection 1023[4] bars further prosecution after a defendant has been convicted or acquitted for any offense of which he might have been convicted 'under that accusatory pleading,'" that the "double jeopardy doctrine was never meant to artificially shield one from future criminal liability for acts that had yet to be committed," and that the "[d]efendant's 'act' of retaining and concealing the minor children after 1992 had not occurred when he was prosecuted in January of that year." (*Ibid.*) We also stated that "[w]here an offense is one that is continuous in nature, the doctrine of double jeopardy forecloses alleging

---

[4] Section 1023 provides: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading."

separate offenses for the conduct committed during the period embraced by the indictment [citation], but not for criminal activity willfully engaged in thereafter." (*Ibid.*)

As we have noted, in this case defendant could not have been prosecuted for his failure to register in June 2006 under the accusatory pleading filed in federal court. Even though the federal indictment alleged conduct beginning in June of 2006, defendant was not subject to prosecution under the federal statute, as a matter of law, until after he crossed state lines in September 2006. (*Carr, supra*, 560 U.S. at pp. \_\_\_–\_\_\_ [130 S.Ct. at pp. 2238–2239]; *Sanders, supra*, 622 F.3d at pp. 782–783.) Thus, the conduct alleged in the state complaint was not "embraced by" the federal indictment.

With regard to defendant's contention that the state prosecution was barred because the failure to register under section 290 is a continuing offense, the court in *People v. Meeks* (2004) 123 Cal.App.4th 695 [20 Cal.Rptr.3d 445] (*Meeks*) explained that a continuing offense is "one 'marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists and there is a failure to perform that duty.' [Citation.] But simply because the Legislature intended that a violation of section 290 be a continuing offense does not mean that a defendant cannot be convicted and punished for new and separate violations of section 290 as he continues to ignore the law." (*Meeks*, at p. 702.) The court added, "It would ill serve the purpose of section 290 to provide defendants who fail to register with blanket immunity from prosecution for all but a single failure to register. A defendant who knows that he is subject to prosecution for each violation of the registration requirement is more likely to comply in order to avoid additional punishment and is more likely to become visible again to law enforcement. Thus visible, he arguably is less likely to repeat his sexual crimes. By requiring defendants to register annually and with every change of residence, it was no doubt the Legislature's intent to treat each violation of the registration requirements as a separate, continuing offense in order to encourage compliance with the law and to ensure to the extent possible that a sex offender's whereabouts remain known." (*Meeks*, at pp. 702–703.) In response to the defendant's section 654 challenge, the *Meeks* court stated: "[E]very time defendant moves, this triggers a new registration requirement, each of which continues indefinitely and overlaps with the one before it. However, each is a separate offense." (*Meeks, supra*, 123 Cal.App.4th at p. 705.) Thus, although the requirement that defendant register was continuing, the continuing nature of the offense did not preclude separate punishment in state court for a separate violation of section 290 that as a matter of law was not subject to prosecution in federal court.

For all these reasons, we conclude that the trial court did not err when it denied defendant's motion to dismiss the state court complaint.

## DISPOSITION

The judgment is affirmed.

Premo, Acting P. J., and Duffy, J.,* concurred.

A petition for a rehearing was denied January 17, 2012, and appellant's petition for review by the Supreme Court was denied April 11, 2012, S199736.

---

*Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.