Filed 7/16/21  P. v. Jackson CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B302635 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA140043) |
| v. | |
| KYLE QUENTIN JACKSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tammy Chung Ryu, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Kyle Quentin Jackson pleaded guilty in Kentucky to four counts of distribution of matter portraying a sexual performance by a minor and four counts of possession or viewing of matter portraying a sexual performance by a minor. A California jury subsequently convicted Jackson of four counts of forcible lewd act upon a child under 14 years old and two counts of lewd act upon a child under 14 years old, and found true multiple victim allegations. Jackson argues his Kentucky convictions barred the subsequent California prosecution. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Information*

The information charged Jackson with six counts of forcible lewd act upon a child under 14 years old (Pen. Code,[1] § 288, subd. (b)(1)). The information alleged Jackson committed the crimes between December 17, 2015 and January 11, 2016. The information also alleged as to all counts that Jackson committed the offenses against more than one victim (§ 667.61, subds. (b) & (e)). Jackson pleaded not guilty to the charges and denied the special allegations.

B. *The Evidence at Trial*

1. *The crimes*

Dorian F. was 11 years old in January 2016.[2] His brother Andy F. was eight years old, and his brother Ivan F. was two years old.

---

[1]     All further statutory references are to the Penal Code.

[2]     Dorian was 15 years old when he testified at trial.

2

Dorian had an iPad on to which he downloaded the Kik, Instagram, and Snapchat apps. Kik is a messaging app Dorian's friends were using. Dorian's Kik account username included his first name. Dorian created the accounts to send sexually explicit material. His accounts were public so people he did not know could contact him. He received and responded to messages from people he did not know.

"Dancechick701" sent Dorian a message via Kik, together with a photograph of a teenage girl who Dancechick701 purported to be. Dancechick701 said she was 14 years old. Dorian told Dancechick701 he was 11 years old, he lived in Los Angeles, and he had two brothers named Andy and Ivan, ages eight and two. Dorian believed Dancechick701 was a teenage girl.

Dorian and Dancechick701 began to exchange messages. Dorian never had a live voice conversation with Dancechick701. Initially Dorian and Dancechick701 corresponded about school. Dancechick701's messages became sexual, which was new to Dorian. They also exchanged sexual photographs and videos. Dancechick701 sent Dorian a video of herself masturbating, and Dorian did the same.

Dorian also sent nude photographs of himself to other Kik users. Dancechick701 told Dorian not to send nude photographs of himself to other people online because the recipients could be someone other than who they claimed to be.

Dorian asked Dancechick701 how he could be sure Dancechick701 was not someone else. Dancechick701 told Dorian he could confirm a person online was who he or she claimed to be by asking for a picture of the person holding up three fingers. Dorian asked Dancechick701 for a photograph of herself holding up three fingers. Dancechick701 sent Dorian a photograph of the same girl from the earlier photographs and videos holding up

three fingers. Dorian believed Dancechick701 was the teenage girl in the photographs because Dancechick701 was "helping [him] out" by warning him that people online might not be who they claimed to be.

Dancechick701 began requesting videos from Dorian depicting specific sexual acts. Dancechick701 asked Dorian to send her a video of Dorian engaging in oral sex with Andy. Dorian did not want to make the video with Andy. Dancechick701 told Dorian that if he refused, Dancechick701 would send Dorian's sexual photographs and videos to people Dorian followed online, including people at Dorian's school. Dorian felt he had to agree to Dancechick701's demand because he did not want to be "humiliated" at school.

Dorian explained the situation to Andy. Dorian told Andy that someone was blackmailing him into making the video. Dorian "begged" Andy to make the video, and agreed to buy Andy Pokemon cards in exchange for Andy's participation. Andy agreed to make the video.[3]

Dorian sent Dancechick701 a video of Andy orally copulating Dorian. Dorian ejaculated but he did not derive any pleasure from the conduct. Dorian thought that if he made the video, "it would be all over."

Instead Dancechick701 wanted "more and more" videos, including a video of Dorian and Andy having sexual intercourse. Dorian refused and offered to engage in oral sex instead. Dorian sent Dancechick701 another video of Andy orally copulating

_____

[3] Andy testified at trial that Dorian asked him to make the video in a "rush[ed] voice," Dorian's "eyes were watery," and Dorian looked sad. Andy did not want to make the video with Dorian.

Dorian. Dorian sent Dancechick701 another set of videos in which Andy rubbed Dorian's stomach and chest and may have stroked Dorian's penis; Dorian testified he did not specifically remember whether the latter conduct occurred.

At Dancechick701's request, Dorian sent a photograph of his penis with Ivan's arm on it. On cross-examination, Dorian acknowledged he testified at the preliminary hearing that he rubbed his penis in Ivan's face.

Sometimes Dancechick701 was unhappy with videos Dorian sent her. She would demand Dorian remake the videos in a different way.

Dorian tried to ignore Dancechick701 but she threatened to "ruin" him by sending Dorian's photographs and videos to his parents and others. Dorian did not tell his parents because he was worried they would think he was a "disgrace" and "weird" and would not love him anymore.

Dorian blocked Dancechick701 on Kik. A different user with a different screenname contacted Dorian saying she was Dancechick701 and asking Dorian why he had blocked her. Dancechick701 told Dorian she would follow every person Dorian followed online and post photographs of Dorian; Dancechick701 also told Dorian she had found his mother's online account. Dorian became scared Dancechick701 might expose him, so he unblocked her.

Dancechick701 continued to request more videos. Dorian ultimately sent Dancechick701 five videos with which she was satisfied.

Dorian sent Dancechick701 videos over the span of one week. Dancechick701 told Dorian she would delete the videos.

## 2. *The discovery of the crimes*

On January 10, 2016 Dorian's father Guadalupe F. found the videos Dorian had made on Dorian's iPad. Guadalupe confronted Dorian the next day; Dorian was nervous and scared. Dorian initially lied and said he had seen the sexual acts on television. Guadalupe knew Dorian was lying because the family's television had parental channel blocks. Dorian told Guadalupe he had created a webpage and befriended a girl online. Dorian told Guadalupe the girl asked Dorian for "more and more" things.

Dorian's parents told him what to say to Dancechick701 to try to determine whether Dancechick701 was actually a teenage girl. Dancechick701 accused Dorian of "acting weird." When Dorian asked Dancechick701 to prove her identity, Dancechick701 became suspicious because Dorian and Dancechick701 had already exchanged the three-finger pictures. Dorian asked for a screenshot of Dancechick701's video gallery to confirm she had deleted the videos Dorian had sent her. Dancechick701 made excuses and would not send a screenshot.

Guadalupe and his brother read the messages from Dancechick701 and sent messages back. When Guadalupe's brother sent a message accusing Dancechick701 of being a sexual predator, Dancechick701 insisted she was a teenage girl. At Guadalupe's request, Dorian told Dancechick701 he was going to report her to the police. Dancechick701 replied that others had told her the same thing, but she would not be caught because "there was nothing wrong that she was doing." Dorian was angry that other children were "falling into this trap." Dorian was also upset because he felt it would be unfair for him to be "humiliated" while Dancechick701 would not be punished. Guadalupe went to the police after consulting with his brother, whose son is a police officer.

### 3.    *The investigation*

Los Angeles County Sheriff's Department Deputy Jesus Jimenes met with Guadalupe, Dorian, and Andy on January 11 or 12, 2016. Dorian told Deputy Jimenes he had met someone he believed to be a teenage girl through his Kik account and the person had forced Dorian to send her sexually explicit videos.

Los Angeles County Sheriff's Department Detective David Johnson, a member of a specialized unit addressing internet crimes against children, interviewed Dorian on January 18, 2016. Dorian told Detective Johnson he had met someone he believed to be a 14-year-old girl online and had exchanged nude images and videos with the person. Dorian said the person eventually demanded Dorian send her videos that made Dorian uncomfortable and that Dorian did not want to make, but Dorian relented because the person threatened to disseminate Dorian's photographs and videos to his family and friends. Based on a username Dorian provided, Detective Johnson obtained search warrants that enabled him to identify Jackson.

Detective Johnson contacted Detective Michael Nade of the Bowling Green Police Department in Bowling Green, Kentucky on or about March 9, 2016 to join an investigation of Jackson. Detective Nade and others approached Jackson at his workplace in Kentucky. Jackson did not readily hand over his cellphone, despite being told several times the police had a search warrant for the device. Eventually the officers handcuffed Jackson and removed the cellphone from his back pocket. Police arrested Jackson in Kentucky on March 9, 2016.

### 4.    *The electronic evidence*

Pursuant to search warrants for Jackson's apartment and electronic devices found on Jackson or in his residence, officers

7

searched Jackson's apartment and found a second cellphone and a laptop computer.  The officers later found additional electronic devices inside a safe.  The police used a software program, Cellebrite, to extract data from the devices.

The username extracted from Jackson's Kik account was Prettygirl987.  The email address used to register Jackson's Kik account was CMuddygal9@aol.com.  The vanity name (i.e., the name that appears to other users) for Jackson's Kik account was Dancechick701.  These names and email address were linked to Jackson's email and electronic devices.

On March 6, 2016, in a text exchange between Dancechick701 and a user named "Sara" (who identified himself in one message as "Jake"), the two users described tricking underage boys into believing they were chatting with teenage girls.  The users shared pictures and videos they had obtained from underage boys.  Dancechick701 said that he sometimes "g[o]t boys to do some" with their brothers or their friends.  The users laughed about it.  Dancechick701 told Sara several times not to share anything Dancechick701 sent Sara.

Dancechick701 and Sara discussed Instagram and the popular boy sites on it.  They discussed how to create a profile that allowed them to trick underage boys.  Sara said that although she had "a lot of hot guys," unlike Dancechick701 she did not often have "multiple boys together so you're a bit better than me." When Sara asked Dancechick701 how "far" he had "got[ten] guys to go together," Dancechick701 responded, "Suck each other.  They were brothers.  Even got him with his baby—baby bro."

Dancechick701 asked Sara if she had ever tried blackmailing underage boys to obtain photographs and videos.  Dancechick701 said he had done so and, though it was "very uncomfortable," it

worked. Dancechick701 told Sara he liked boys "under 14" the most.

On March 7, 2016, in a chat conversation between Dancechick701 and a user named "Sharky," the two users swapped child pornography and discussed blackmailing young boys to obtain pornography.

Detective Nade testified that only Jackson had access to Jackson's cellphone. Detective Nade based his testimony on the content found on the device, Jackson's possession of the cellphone, the fact the cellphone was password-protected, and numerous messages found on the device in which Jackson identified himself by his first name.

Detective Nade retrieved several hundred photographs and videos of child pornography from Jackson's cellphone involving prepubescent boys engaged in sexual acts. Police also found several photographs and videos of females, partially or fully nude and masturbating, on Jackson's cellphone and laptop.

In a folder labeled "Kik" officers located more than 25 videos depicting Dorian and his brothers, as well as some still images. The prosecution played some of the videos for the jury. In the videos Dorian and Andy were orally copulating each other and masturbating each other. One video showed Dorian placing Ivan's arm near Dorian's genitals and rubbing his groin area. Though not shown to the jury, Detective Nade testified there were other videos in which Dorian tried to make Ivan orally copulate him.[4]

C.   *The Kentucky Case*

On May 11, 2016 a Kentucky grand jury indicted Jackson on three counts of use of a minor in a sexual performance in violation

_____

[4]     Jackson did not call any witnesses to testify at trial.

of Kentucky Penal Code section 531.310, subdivision (2)(b); five counts of distribution of matter portraying a sexual performance by a minor in violation of Kentucky Penal Code section 531.340; five counts of possession or viewing of matter portraying a sexual performance by a minor in violation of Kentucky Penal Code section 531.335; and one count of unlawful use of electronic means to induce a minor to engage in sexual or other prohibited activities in violation of Kentucky Penal Code section 510.155.

On June 5, 2017 Jackson pleaded guilty to four counts of distribution of matter portraying a sexual performance by a minor in violation of Kentucky Penal Code section 531.340, and four counts of possession or viewing of matter portraying a sexual performance by a minor in violation of Kentucky Penal Code section 531.335. The Kentucky court sentenced Jackson to eight years in prison. Jackson was extradited to California following his plea hearing in Kentucky.[5]

D. *The Jury Verdicts and the Sentencing*

The jury found Jackson guilty of two counts of forcible lewd act upon a child (Dorian) under 14 years old (counts 1 and 2), and two counts of forcible lewd act upon a child (Andy) under 14 years old (counts 3 and 4). The jury found Jackson not guilty of two counts of forcible lewd act upon a child under 14 years old, but

---

[5] The trial court excluded audio and video recordings of Jackson's Kentucky plea hearing. The court ruled that evidence of Jackson's Kentucky plea was relevant and admissible but should be introduced by stipulation or through a testifying detective. The parties entered into a stipulation identifying the charges to which Jackson pleaded guilty and the date of the plea, and stating that following the guilty pleas Jackson was transported to California for prosecution. The prosecutor read the stipulation to the jury.

guilty of two counts of the lesser included offense of lewd act upon a child (Ivan) under 14 years old (§ 288, subd. (a); counts 5 and 6). The jury found true the multiple victim allegations on all counts.

The trial court sentenced Jackson to an aggregate state prison term of 75 years to life, consisting of 15 years to life on each count. The court ordered the sentence on count 6 to run concurrently to the sentence on count 1.[6]

Jackson timely appealed.

## DISCUSSION

### A. *Jackson's Motion To Dismiss*

Jackson moved pretrial to dismiss the California charges on the ground they fell within the prohibition on multiple prosecutions recognized in *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*). Jackson argued his Kentucky convictions precluded the California prosecution.

Defense counsel asserted that "the basis of the facts which underlie the charges in this case arise out [of] the same course of conduct in which [Jackson] faced a prior prosecution in Kentucky and to which he plead[ed] no contest [*sic*]." Defense counsel argued that *Kellett* precluded the People from prosecuting Jackson in "the same case to make [Jackson] go through the same thing again in order to get additional punishment," and that "essentially" Kentucky and California had charged Jackson for the same conduct. Defense counsel acknowledged that Jackson's "admission [in the Kentucky case] is not to the charges that the

---

[6] The parties agree the abstract of judgment incorrectly states the court imposed a consecutive sentence on count 6, and agree this court should order the superior court to correct the abstract of judgment to reflect the concurrent sentence on count 6.

11

district attorney in Los Angeles is now charging him with. Those are two different things."

The prosecutor responded that the district attorney's office approved extradition of Jackson to California before Kentucky authorities arrested Jackson, but had to await the conclusion of the Kentucky case before extraditing Jackson to California. The prosecutor also argued the crimes charged in Kentucky and California had different elements.

The trial court denied Jackson's motion. The court ruled *Kellett* did not apply because California authorities had commenced the process of extraditing Jackson to face charges in California when "Kentucky decided to arrest and charge [Jackson] on their own, based upon their own investigation or information they obtained." The court further ruled *Kellett* did not apply because the California charges differed from the charges to which Jackson pleaded guilty in Kentucky.

B.     *Standard of Review*

"When the double jeopardy question requires the trial court to resolve disputed facts, the appellate court reviews the case under the substantial evidence standard. [Citation.] But, when the facts are uncontradicted and different inferences cannot be drawn, the question of former jeopardy is one of law for the court to decide. [Citation.] Moreover, determination of whether double jeopardy applies in a case involving separate prosecutions of the same or similar conduct in different jurisdictions requires the court to compare and construe the applicable criminal statutes from both jurisdictions. [Citations.] The construction of a statute is also a question of law. [Citation.] On appeal, we review questions of law de novo." (*People v. Davis* (2011) 202 Cal.App.4th 429, 438.)

C.	*The Trial Court Did Not Err in Denying Jackson's Motion To Dismiss*

Jackson contends *Kellett* and sections 654, 656 and 793 barred his prosecution in California following his convictions in Kentucky.  Neither *Kellett* nor section 654's bar on multiple prosecutions applies to separate prosecutions by different jurisdictions.  Further, the California crimes of which Jackson was convicted required proof of conduct different from that required for the Kentucky crimes to which Jackson pleaded guilty.  The trial court did not err in denying Jackson's motion to dismiss.

Section 654 provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."  In *Kellett*, *supra*, 63 Cal.2d 822 the Supreme Court addressed section 654's bar on multiple prosecutions and held:  "When . . . the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause.  Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence."  (*Kellett*, at p. 827.)

The Supreme Court has explained that section 654's bar on multiple prosecutions "does not apply in the context of successive prosecutions in separate jurisdictions."  (*People v. Belcher* (1974) 11 Cal.3d 91, 98 (*Belcher*).)  The *Kellett* "rule is based on the assumption that the state has the opportunity to charge all

13

offenses that may arise out of a single course of criminal conduct," an assumption that "cannot be made where, as here, one of the prosecutions occurred in another jurisdiction." (*Belcher,* at p. 97, fn. 5.)

Section 656 states, "Whenever on the trial of an accused person it appears that upon a criminal prosecution under the laws of the United States, or of another state or territory of the United States based upon the act or omission in respect to which he or she is on trial, he or she has been acquitted or convicted, it is a sufficient defense." Section 793 similarly states, "When an act charged as a public offense is within the jurisdiction of the United States, or of another state or territory of the United States, as well as of this state, a conviction or acquittal thereof in that other jurisdiction is a bar to the prosecution or indictment in this state." Section 656 provides "'greater double jeopardy protection than the United States Supreme Court has determined to be available under the Fifth Amendment of the United States Constitution.'" (*People v. Homick* (2012) 55 Cal.4th 816, 838 (*Homick*).) "[S]ection 793's protective scope [i]s the same as that of section 656, though the former provision act[s] to bar prosecution and the latter as a defense against conviction." (*Id.* at p. 842.)

Section 656 "applies when the *physical conduct* required for the California charges has previously been the subject of an acquittal or conviction in another jurisdiction, regardless of whether the two charges have different requirements as to intent or other nonact elements." (*Homick*, *supra*, 55 Cal.4th at p. 840.) Section 656 does not apply "'where the offense committed is not the same act but involves [conduct] not present in the prior prosecution.'" (*Id.* at p. 843; see *ibid.* ["The application of section 656 thus turns on whether the California charges against defendant required proof of conduct that was not required for

14

conviction of the earlier federal charges."]; *People v. Bellacosa* (2007) 147 Cal.App.4th 868, 874 ["If . . . the offenses require proof of different physical acts, then the California prosecution is not barred even though some of the elements of the offenses may overlap."].)

The same conduct does not underlie Jackson's California charges and his Kentucky convictions. Indeed, Jackson concedes the Kentucky charges to which he pleaded guilty did not "alleg[e] conduct similar to the California charges." To prove Jackson violated section 288, subdivision (a) (lewd act upon a child under 14 years old), the People were required to prove Jackson willfully caused a child to touch his own body, the defendant's body, or the body of someone else, either on the bare skin or through the clothing. (CALCRIM No. 1110; § 288, subd. (a).) To prove Jackson violated section 288, subdivision (b)(1) (forcible lewd act upon a child under 14 years old), the People were required to prove Jackson willfully caused a child to touch his own body, the defendant's body, or the body of someone else, either on the bare skin or through the clothing, and did so using force, violence, duress, menace or fear of immediate and unlawful bodily injury to the child or someone else. (CALCRIM No. 1111; § 288, subd. (b)(1).) Neither of the Kentucky offenses to which Jackson pleaded guilty required proof of such conduct.[7]

---

[7] Kentucky Penal Code section 531.340 provides, "(1) A person is guilty of distribution of matter portraying a sexual performance by a minor when, having knowledge of its content and character, he or she: [¶] (a) Sends or causes to be sent into this state for sale or distribution; or [¶] (b) Brings or causes to be brought into this state for sale or distribution; or [¶] (c) In this state, he or she: [¶] 1. Exhibits for profit or gain; or [¶] 2. Distributes; or [¶] 3. Offers to distribute; or [¶] 4. Has in his or her possession with intent to

15

Jackson argues this court should extend *Kellett* to bar Jackson's California prosecution despite the Supreme Court's instruction that section 654's bar on multiple prosecutions does not apply to successive prosecutions in separate jurisdictions. (*Belcher, supra,* 11 Cal.3d at p. 98; see *ibid.* ["[t]here exists good reason for declining to apply section 654" to successive prosecutions by different jurisdictions].) As an intermediate appellate court, we are bound to follow the Supreme Court's directions. (See *K.R. v. Superior Court* (2017) 3 Cal.5th 295, 308 ["'it is established that a holding of the Supreme Court binds all of the lower courts in the state, including an intermediate appellate court'"]; *People v. Johnson* (2012) 53 Cal.4th 519, 527-528; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Moreover, Jackson's contention that the interstate law enforcement cooperation and the resulting Kentucky and California prosecutions constituted harassment warranting extension of *Kellett* is not on this record persuasive.[8]

---

distribute, exhibit for profit or gain or offer to distribute, any matter portraying a sexual performance by a minor."

Kentucky Penal Code section 531.335 provides, "(1) A person is guilty of possession or viewing of matter portraying a sexual performance by a minor when, having knowledge of its content, character, and that the sexual performance is by a minor, he or she: [¶] (a) Knowingly has in his or her possession or control any matter which visually depicts an actual sexual performance by a minor person; or [¶] (b) Intentionally views any matter which visually depicts an actual sexual performance by a minor person."

[8] Jackson also implies that when he entered his guilty pleas in Kentucky he was unaware he would be prosecuted in California. The Kentucky plea form Jackson signed belies this claim. The plea form expressly states Kentucky "will dismiss counts 1-3

## DISPOSITION

The judgment is affirmed.  The superior court is directed to prepare a corrected abstract of judgment reflecting that the sentence on count 6 runs concurrently with the sentence on count 1 and to forward it to the Department of Corrections and Rehabilitation.


McCORMICK, J.*


We concur:


PERLUSS, P. J.


FEUER, J.

---

without prejudice due to deferring the prosecution of the charges by the Los Angeles County Sheriff's Department," and "California has [a] detainer on the defendant for similar charges."

*       Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.